RECEIVED

FEB 25 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

GILBERT GALLOW

VERSUS

NEWFIELD EXPLORATION CO., ET AL.

CIVIL ACTION NO. 06-0259

JUDGE DOHERTY

MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before this Court are three Motions for Summary Judgment, as follows: (1) Motion for Summary Judgment filed by defendant Newfield Exploration Company ("Newfield") [Doc. 47]; (2) Motion for Summary Judgment filed by defendant Gulf Crews, Inc. ("Gulf Crews") [Doc. 48]; and (3) Motion for Summary Judgment filed by defendant C&D Production Specialist Co. ("C&D") [Doc. 46].

The motions are opposed by plaintiff, and defendants have filed reply briefs to the opposition briefs. The issues are now ripe for consideration.

## I. Factual and Procedural Background

The parties largely agree on the factual scenario which places this matter before the Court. Plaintiff, Gilbert Gallow, asserts a claim for personal injuries arising out of an April 11, 2005 accident which occurred while he was attempting a swing rope transfer from a fixed production platform located on the Outer Continental Shelf, off the coast of the State of Louisiana, to a vessel located alongside the platform. At the time, Gallow was an employee of Global X-Ray & Testing Corp. working as a technician's helper. The platform in question, known as the Facility 1, is operated and partially owned by defendant Newfield, which was also the time charterer of the vessel.

Gallow was attempting to transfer from the platform to the M/V QUEST, a crew boat owned and operated by Gulf Crews, Inc., which was utilized by Newfield for the transport of personnel and supplies within the West Delta Field.

On his first attempt, Gallow apparently did not reach the landing area on the vessel and ultimately swung back into the platform, allegedly striking his back on the beam of the Plus 5 deck supporting the grating. There were numerous other uneventful swing rope transfers in the field that day, including Gallow's second attempt to transfer to the vessel, immediately following the failed first attempt, which was successful. Sea conditions on the date of the accident were reported at three to four feet on a platform located nearby in the same field. Captain Dennis Katan of the M/V Quest testified seas were approximately three to five feet that day.[1] It is undisputed Gallow did not question whether it was safe to attempt the transfer, and both John Kevin Myers, the C&D employee acting as operator of the platform on the date in question, and Captain Katan testified they did not believe sea conditions were unsafe. Myers and Katan also testified they did not believe the swing rope transfer should not be attempted.

At no time did Captain Katan contact anyone at Newfield to advise of any adverse conditions or ascertain authority for whether the personnel transfer should go forward, and at no time did any personnel directly employed by Newfield board the platform on the date of the accident.[2] Additionally, the platform and swing rope had been inspected nine days prior to Gallow's accident, and again one day after the accident, and no defects or problems were reported with either.

Plaintiff's original suit named as defendants his employer, Global X-Ray, and the platform

---

[1] See Deposition of Captain Dennis Katan, p. 20, ll. 7-9.

[2] John Meyers, an employee of C&D, was on board the platform. C&D had contracted with Newfield to supply Meyers.

operator and part-owner, Newfield. In his original complaint, plaintiff alleges his claims arise under the Jones Act, General Maritime Law, Section 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §901, *et seq.*, and the doctrine of unseaworthiness.

On April 4, 2006, plaintiff filed a "Motion to Amend Complaint," seeking to add Gulf Crews, Inc., the owner/operator of the M/V QUEST, as a defendant, and seeking to dismiss Global X-Ray [Doc. 5]. The magistrate judge granted the motion, and plaintiff's first supplemental and amending complaint was subsequently filed into the record on April 6, 2006 [Doc. 7]. In the first amended complaint, plaintiff alleges that, in addition to his claims against Newfield under the general maritime law and §905(b), his claims against Newfield arise under the Outer Continental Shelf Lands Act, 43 U.S.C. 1331, *et seq.*, and "Louisiana law for negligence." Additionally, plaintiff alleges his claims against Gulf Crews arise under general maritime law and §905(b); and he dismissed his Jones Act claim against his employer, Global X-Ray.

On September 1, 2006, plaintiff filed a "Motion to Add Additional Party," seeking leave to add C&D Production Specialist Co., Inc. ("C&D") as a party defendant [Doc. 22]. In his motion, plaintiff states he "desires to add C&D . . . as a party defendant, it being alleged that C&D had responsibility and was negligent in causing the accident and injuries to Gilbert Gallow." The magistrate judge granted the "Motion to Add Additional Party" by ordering "the original complaint filed on February 16, 2006 *be allowed to be supplemented and amended* to add C&D Production Specialist Company, Inc. as a party defendant." [Doc. 23 (emphasis added)]. However, plaintiff did not also, or thereafter, file a formal complaint amending his petition and asserting the specific claims and/or legal theories supporting any claims to be made against C&D. Nevertheless, C&D filed a responsive pleading entitled "Responsive Pleading Presenting Defenses Under Rule 12B" on

October 30, 2006 [Doc. 26]. When filed into the record, it was listed on the docket sheet as "Answer to Complaint and First Supplemental and Amending Complaint." Thereafter, C&D filed the present motion entitled "Motion for Summary Judgment on Behalf of C&D Production Specialist Company, Inc." [Doc. 46] requesting this Court dismiss plaintiff's claims against it.

On October 3, 2007, with leave of court, plaintiff filed a "Second Supplemental and Amending Complaint," adding Grand Isle Shipyard, Inc., the company that allegedly provided Gallow's swing rope transfer training, as a party defendant [Doc. 53]. In his second amending complaint, plaintiff asserts "all parties . . . are liable in solido under the General Maritime Law, 905(b) of the Longshore and Harbor Workers Act, the Outer Continental Shelf Land Act, [and] Louisiana law," but cites no statutory authority for this allegation.

## II.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

-4-

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id.  To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.    Law and Analysis

Before addressing the applicable law and substance of the pending motions, the Court first notes the procedural posture of this case is less than desirable.  As noted above, plaintiff has not clearly articulated which claims and legal theories are alleged against which parties, but rather has collectively referenced all defendants as in one category and alleged a laundry list of claims against the group, including claims under the general maritime law including negligence and unseaworthiness, Section 905(b) of the LHWCA, OCSLA, and, generically, "Louisiana law." Notably, in his numerous complaints and amending complaints, plaintiff has failed to specifically

allege *which* provisions any of the noted laws any defendant is alleged to have violated, and only specifically asserts liability under one Louisiana Civil Code article – Article 2317.1 – in his brief in opposition to Newfield's motion for summary judgment.  These generic references to communal legal claims against multiple defendants who stand in stark contrast one to the other complicate the Court's task in ruling on the instant motions.  In essence, this Court is asked to dismiss particular claims as to particular defendants when this Court cannot determine what claims are being made against which defendant, under what law, and upon what set of facts.  Notwithstanding the foregoing, all three motions appear, on their face, to have at least partial merit, and this Court issues the following ruling.

### A.    Newfield's Motion for Summary Judgment [Doc. 47]

Newfield is the operator/part-owner of the platform in question, as well as the time charterer of the vessel.  Plaintiff alleges his claims against Newfield arise under general maritime law, §905(b), the Outer Continental Shelf Lands Act, 43 U.S.C. 1331, *et seq.*, and "Louisiana law for negligence."  In its motion for summary judgment, Newfield argues it is entitled to "judgment as a matter of law," *without delineating the specific claims for which it seeks dismissal*; presumably it seeks dismissal of *all* claims brought by plaintiff.[3]  Newfield alleges there has been no testimony from any source that there was *any* condition of the platform or the swing rope at the time of the accident which caused or contributed to the accident in any way, and as it had/has no other basis for liability it, therefore, cannot be found liable to the plaintiff in either its capacity as operator/part-owner of the platform or time charterer of the vessel.  It would seem Newfield's conclusion is over-

---

[3] Although not abundantly clear, it appears Newfield desires dismissal of *all claims* made by plaintiff; however the claims plaintiff has brought, against which defendants, what law governs each claim, what duty is owed if any, is not abundantly clear, as such has not been set forth by the plaintiff in either the original complaints or any subsequent amending complaints or by defendants by way of clarification or as movants.

broad, however, as Newfield has presented certain evidence and argument to support its assertion and plaintiff has presented precious little evidence in opposition, that does not end the inquiry.

As movant, however, Newfield bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Plaintiff has the obligation, in response to whatever evidence and argument defendant has presented within its motion for summary judgment, to produce evidence demonstrating the existence of a genuine issue of material fact as to each of the challenged elements of its case for which he will bear the burden of proof at trial. *Rizzo v. Children's World Learning Ctr.*, 84 F.3d 758, 762 (5th Cir. 1996). This burden is not satisfied with "some metaphysical doubt as to the material facts," nor by only a "scintilla" of evidence. *Little, supra*, at 1075.

### 1.    Newfield's Capacity as Platform Operator/Part-Owner

Newfield alleges plaintiff's claims against it as platform operator/part-owner are governed by Louisiana law pursuant to OCSLA, 43 U.S.C. §1331, *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A). Newfield alleges plaintiff's claims against it "therefore fall under the provisions of the Louisiana Civil Code applicable to buildings or things within one[']s control," *defendant* citing Articles 2315, 2317, and 2322 of the Louisiana Civil Code.

As stated previously, plaintiff has not specifically alleged *which* specific provisions of the Louisiana Civil Code Newfield allegedly violated. Additionally, although Newfield states plaintiff's

claims against it fall under Articles 2315, 2317, and 2322, to the extent plaintiff asserts "claims applicable to buildings or things within one's control," plaintiff's claims theoretically could fall under Articles 2317,[4] 2317.1 and 2322[5] for "premises liability." In the briefing associated with Newfield's motion for summary judgment, *plaintiff* identifies only Article 2317.1 as his basis for liability against Newfield.

Article 2317.1 states:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. C. Art. 2317.1.

To prevail on a claim brought under article 2317.1, an injured plaintiff must prove: (1) the

---

[4] Article 2317, entitled "Acts of others and of things in custody" states:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

[5] Louisiana Civil Code article 2322 provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

To prevail on a claim premised upon La. C.C. art. 2322, a plaintiff must prove: (1) there is a building; (2) the building is owned by the defendant; (3) there is a "ruin," caused by some vice in the building's construction or by a neglect to repair it; (4) the owner knew or should have known about the vice or defect; (5) the vice or defect caused plaintiff's damages; (6) the damages could have been prevented by the exercise of reasonable care; and (7) the defendant failed to exercise such reasonable care.

defendant owned or had custody of the thing; (2) the thing contained a ruin, vice or defect which presented an unreasonable risk of harm to others; (3) the ruin, vice or defect caused the damage; (4) the defendant knew or, in the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage; (5) the damage could have been prevented by the exercise of reasonable care by the owner or custodian; and (6) the owner or custodian failed to exercise such reasonable care.

Newfield argues there was no vice or defect in the platform or the swing rope on April 11, 2005, and presents the testimony of John Kevin Myers, the C&D employee on the platform on the day of the accident, who testified there was nothing wrong with the platform on the day of the incident and nothing wrong with the swing rope.[6] Newfield, also, cites the deposition testimony of Gallow himself, who testified he had no complaints about the swing rope he used that day.[7] Additionally, Newfield submits the 30(b)(6) deposition testimony of David Ardoin, corporate representative of Newfield, who testified the Facility 1 platform and swing rope used by Gallow were inspected on April 2, 2005 – nine days prior to Gallow's accident -- and again on April 12, 2005 – one day after the accident, and both "Platform Status/Safety Systems Checks" reported no defects or vices in either the platform or the swing rope.[8] In all, Newfield argues there has been no evidence put forth showing a vice or defect in either the platform or swing rope, nor any other competent

---

[6] *See* Deposition of John Kevin Myers, attached as Exhibit "D" to Newfield's motion for summary judgment, p. 15, ll. 15-20.

[7] See June 28, 2007 deposition of Gilbert Gallow, attached as Exhibit "C" to Newfield's motion for summary judgment, p.24, ll. 13-19.  The record shows Gallow was deposed twice, first on August 15, 2006, before C&D was added as a party defendant, and again on June 28, 2007.

[8] See 30(b)(6) deposition of Newfield, pp. 14-17, attached as Exhibit "A" to Newfield's motion for summary judgment, and exhibits attached to deposition, including "Platform Status/Safety Systems Check" forms for April 2, 2005 and April 12, 2005.

evidence showing the platform and/or swing rope had anything to do with Gallow's accident and has presented otherwise admissible evidence to the contrary.

Plaintiff does not differentiate his argument and/or facts with respect to his claims against Newfield as platform owner/operator and time charterer of the vessel. Rather, plaintiff argues the same set of facts against Newfield in both capacities. These facts include: (1) whether the weather conditions on April 11, 2005, which included three-to-four foot swells "constantly saturated the Plus 5 deck" and thus, rendered the Plus 5 deck "too close to the waterline"; (2) whether the knot on the rope Gallow used for his transfer was correctly positioned, given that Gallow slipped down one knot while attempting his first transfer; (3) whether Gallow mistimed his swing, as Newfield alleges; and (4) whether the platform was unsafe because it was not equipped for personnel basket transfers as opposed to swing rope transfers. Gallow argues, "based upon the positioning of the rope, the platforms, the lack of a personnel basket, that pursuant to Civil Code Article 2317.1 (2007) defendant Newfield is strictly liable for 'damage caused by ruin, vice or defect in things.'"[9]

Plaintiff also cites this Court's ruling in *Porter v. Gulf Tran., Inc., et al.*, Civil Action No. 02-1453, for the proposition that Newfield "should have known the danger would exist under the conditions that faced Mr. Gallow."[10] A review of the cited portion of the transcript in the *Porter* case, however, shows the specific testimony to which Gallow refers describes the duty of a *shipowner*, and not the duties of either a platform owner or a time charterer, the capacities under

---

[9] Strict liability, as argued by plaintiff, no longer is the standard under 2317.1. 2317.1 was amended in 1996 as will be discussed, *supra*.

[10] See Transcript of Proceedings before the Honorable Rebecca F. Doherty, *Porter v. Gulf Tran. Inc.*, Civil Action 02-1453, dated September 25, 2003, p. 24, ll.12-14, attached as exhibit to plaintiff's opposition brief.

which Newfield has been sued in the instant case.[11]  Furthermore, the facts of the *Porter* case are

distinguishable in several respects.  In *Porter*, sea conditions were marginal, with seas being six feet

*at a minimum*.  Nevertheless, this Court concluded *the marginal sea conditions themselves* did not

elevate the level of negligence on the part of the vessel.  Rather, it was the failure of the deckhand

to advise the captain of the vessel that two more experienced workers had had problems attempting

their swing rope transfers (one fell over the railing onto the landing area and the other almost fell into

the sea) *before the unsuccessful attempt* of Porter that gave rise to the *vessel's negligence.*  In *Porter*,

this Court concluded that, after the first two problematic attempts, the vessel *was on notice* of unsafe

conditions and should have altered or terminated operations.  No evidence has been presented there

had been any difficulty with swing rope transfers prior to plaintiff's aborted attempt.  To the

contrary, several swing rope transfers had preceded plaintiff's attempt, without incident.  Thus,

*Porter* is significantly factually distinguishable from the instant case.

This Court also addresses plaintiff's argument that Newfield is "'strictly liable for 'damage

caused by ruin, vice or defect in things'" pursuant to Civil Code Article 2317.1 (2007).  The Court

notes strict liability as argued by the plaintiff did not survive the 1996 amendments to the Louisiana

Civil Code.  In 1996, the Louisiana legislature appended a new article to Article 2317 – La.Civ.Code

art. 2317.1 – which states, in part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin,
> vice, or defect, *only upon a showing that he knew or, in the exercise of reasonable
> care, should have known of the ruin, vice, or defect which caused the damage, that
> the damage could have been prevented by the exercise of reasonable care, and that
> he failed to exercise such reasonable care.*

---

[11] The cited portion of the transcript, referencing the Fifth Circuit, states: "The Court goes on to note, "We held that, though not an insurer, a shipowner is bound not only by what it actually knows, but by what it should have known as well."

Thus, Article 2317.1 infuses "actual or constructive knowledge" and traditional negligence terminology - "reasonable care"- into Article 2317. The result is that most Louisiana courts have determined that "[t]he addition of knowledge as an element has effectively terminated strict liability in most circumstances." *See, e.g., Lasyone v. Kansas City Southern R.R.*, 786 So.2d 682, 689 (La. 2001) (applying Article 2317 as it existed pre-1996 amendment, but nevertheless citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law, §14-2, at 330-32 (1996), and noting "[b]y requiring knowledge or constructive knowledge under Article 2317.1, the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim"); *Wiley v. Sanders*, 796 So.2d 51, 54(La. App. 2nd Cir. 2001) ("The addition of knowledge as an element has effectively eliminated strict liability in most circumstances."); *Myers v. Dronet*, 801 So.2d 1097, 1105-06 (La. App. 3rd Cir. 2001) (accord); *Greenhouse v. C.F. Kenner Assoc. Ltd. Partnership,* (La. App. 4th Cir. 1998) (accord); *Trice v. Isaac*, 759 So.2d 843, 846 (La. App. 5th Cir. 2000) (accord).

Because the plaintiff's accident occurred after the amendment to Article 2317, this Court must apply the current version of the Article. Therefore, to prevail under Article 2317.1, plaintiff must show that Newfield knew or, in the exercise of reasonable care, should have known of an alleged ruin, vice, or defect in the platform.

In the instant case, there is no evidence of a problem with the platform or swing rope; to the contrary, the swing rope had been inspected nine days before the accident and no problem was found. There were no problematic swings prior to Gallow's swing. Furthermore, no one – including Gallow himself – testified there was a problem with the platform or the rope itself. Rather, to the contrary, the undisputed evidence presented is the platform and rope were inspected nine days before Gallow's accident, and one day after the accident, and no problems were reported with either. As noted,

-13-

plaintiff provides no contradictory evidence there was a problem with either the platform or the rope.

Furthermore, with respect to plaintiff's argument the platform should have been equipped with a personnel basket for transfers, plaintiff offers no evidence that swing rope transfers from this platform are inherently dangerous. Indeed, the law of the Fifth Circuit is clear that "there is nothing dangerous in the swing rope transfer in the abstract." *Hodgen*, 87 F.3d at 1521. *See also Musial v. A & A Boats, Inc.*, 696 F.2d 1149 (5th Cir. 1983) (noting that swing rope transfers are "an accepted mode of boarding [a] tender vessel" from a platform). In *Hodgen*, the timing of the swing was considered to be high-risk because of the severe weather conditions, which included seven-to-nine foot seas. Plaintiff in *this* matter has put forth no evidence that three-to-five foot swells render a swing rope transfer from this platform inherently dangerous or any evidence this platform was sufficiently unique as to render a swing rope transfer overly hazardous. Indeed, all evidence – including the deposition testimony of both Captain Katan and John Myers as well as Gallow himself, and the finding of this Court in *Porter* – is to the contrary. Thus, given *Hodgen*, plaintiff's suggestion that a personnel basket should have been used – without any additional supporting evidence – is not sufficient to defeat summary judgment in Newfield's favor.

Gallow also argues the knot on the rope might have been incorrectly positioned. Alone, this unsupported speculation is insufficient to defeat an otherwise supported and argued motion for summary judgment. Plaintiff has offered no competent evidence showing the placement of this particular knot – or any other knot on the rope – created an unsafe condition that led to Gallow's accident and injuries; whereas Newfield presents the inspection report of nine days earlier. Finally, plaintiff has presented no evidence showing the swing rope or knot were not properly maintained or defective. To the contrary, as noted, the undisputed evidence presented is the platform and rope

-14-

were inspected nine days before Gallow's accident, and one day after the accident, and no problems were reported with either.

In short, plaintiff has offered no evidence showing there was a vice or defect in either the platform or swing rope in question, nor any basis to argue notice of a problem as to either for Newfield. Plaintiff's burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Here, plaintiff's minimal self-serving statement is unsupported by evidence, and this Court, in the absence of any proof, cannot assume that plaintiff *could* or *would* prove the necessary facts at trial. *Little, supra*, 37 F.3d at 1075.

Therefore, considering the evidence and applicable law, and drawing all reasonable inferences in favor of the non-moving party, this Court concludes plaintiff has failed to carry his burden to meet defendant's well-reasoned and supported motion by demonstrating by competent evidence the existence of a genuine issue of material fact warranting trial against Newfield in its capacity as platform operator/part-owner under any theory of law presented. Thus, Newfield's motion for summary judgment requesting this Court dismiss plaintiff's claims against Newfield in its capacity as platform owner/operator is GRANTED.

## 2. Newfield's Capacity as Time Charterer of the M/V Quest

Newfield alleges plaintiff's claims against it as the time charterer of the M/V QUEST arise under the provisions of Section 905(b) of the LHWCA. "A time charterer owes a hybrid duty arising from tort law to exercise the control the charter affords it over the timing, route, and cargo of a vessel's journey in a reasonably prudent manner." *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 496 (5th Cir. 2002), citing *Hodgen v. Forest Oil corp.*, 87 F.3d 1512, 1517 (5th Cir. 1996).

In support of its motion for summary judgment in its capacity as time charterer, Newfield offers the testimony of Gallow himself, who testified it was his decision when to swing, and no one told him when to swing.[12]  Newfield also submits the testimony of Captain Katan, who testified three-to-five foot swells are not uncommon during the winter and early spring months in the West Delta Field, and it is not inherently unreasonable or unsafe to conduct swing rope transfers in such conditions.[13]  Captain Katan also testified at no time did he feel the need to contact Newfield concerning the weather conditions or to discontinue the swing rope transfers due to sea conditions.[14]

Newfield also offers the deposition testimony of John Myers, who testified Gallow's accident was not caused by weather conditions but by a mis-timed swing:

> Q.    Do you remember the size of the seas or the weather conditions at the time he was attempting to cross?
>
> A [Myers].    Maybe three to four feet.  It wasn't big.
>
> Q.    In your statement you say he was trying to swing and he missed the boat deck.
>
> A.    Yes.
>
> Q.    Elaborate a little bit more on that.  What does that mean?
>
> A.    He went to swing out, and the boat dropped, and he stepped off the platform and dropped down.  He misjudged it.  When the boat dropped, it didn't come back up right away, so he misjudged it and - -
>
> Q.    And how were the men - - are they supposed to swing when the boat's coming up, or are they supposed to swing when the boat goes down?

---

[12] See June 28, 2007 Deposition of Gilbert Gallow, attached as Exhibit "C" to Newfield's motion for summary judgment, at p. 24, ll.20-25; p. 25, ll. 1-2.

[13] See Deposition of Captain Katan, attached as Exhibit "B" to Newfield's motion for summary judgment, at p. 21, ll.5-25; p. 22, ll.1-2.

[14] *Id.* at p. 31.

A.     Wait until it bottoms out . . .[15]

As this Court previously noted, in presenting his argument in rebuttal, plaintiff does not differentiate between the facts as they pertain to Newfield in its separate capacities as platform owner/operator and time charterer of the vessel. This Court, however, notes plaintiff's evidence that pertains most to Newfield's capacity as time charterer are plaintiff's arguments that the weather conditions created a dangerous condition for swing rope transfers; that water lapping onto the platform and the vessel's deck created an unsafe condition for the transfer; and that whether Gallow mistimed his swing is a question of fact for trial.

As this Court has already noted, plaintiff has offered no evidence supporting his argument that the weather creates a genuine issue of material fact as to Newfield liability as time charterer.

Both Captain Katan and John Myers testified weather conditions were usual for that time of year, and plaintiff himself testified he did not hesitate to swing.  The seas were not marginal or problematic, but rather were "maybe three to four feet,"[16] "three to five feet."[17]  Thus, neither the platform nor the vessel were on notice that swing rope transfers would have been unreasonably hazardous on the date of the accident because of weather.  Plaintiff also fails to offer evidence to support his suggestion water was lapping up onto the vessel's deck during the transfer and thus created an unreasonable risk of harm for which a time charterer could or should have liability.  To the contrary, there were several successful swing rope transfers immediately preceding Gallow's

---

[15] Deposition of John Kevin Myers, attached as Exhibit "D" to Newfield's motion for summary judgment, at p. 19, lines 9 - 25.

[16] See Deposition of Myers, attached as Exhibit "D" to Newfield's motion for summary judgment, at p. 19, l. 12.

[17] See Deposition of Captain Dennis Katan, attached as Exhibit "B" to Newfield's motion for summary judgment, at p. 20, ll. 7-9.

aborted attempt and Gallow's subsequent attempt was successful. Thus, the plaintiff has presented no evidence from which a reasonable inference can be drawn to support his argument.

Furthermore, plaintiff's testimony concerning how he timed his swing does not create liability on the part of Newfield as time charterer. Indeed, Newfield's duty as time charterer requires it to exercise the control the charter affords it over the timing, route, and cargo of a vessel's journey in a reasonably prudent manner. Plaintiff must allege some breach of Newfield's duty as time charterer in order to establish liability against Newfield in that capacity. Arguing that plaintiff might or might not have mis-timed his swing does not support plaintiff's argument that Newfield is therefore liable as *time charterer*.

This Court has noted plaintiff's burden cannot be satisfied with "some metaphysical doubt as to the material facts."[18] Thus, as with plaintiff's claims against Newfield in its capacity as owner/partial owner of the platform, this Court must conclude plaintiff has failed to carry his burden to meet defendant's well-reasoned and supported motion by demonstrating by competent evidence the existence of genuine issue of material fact warranting trial against Newfield in its capacity as time charterer under any legal theory presented.

Consequently, Newfield's motion for summary judgment [Doc. 47] requesting this Court dismiss plaintiff's claims against Newfield in its capacity as time charterer is GRANTED.

Thus, Newfield's motion for summary judgment is GRANTED in its entirety.

**B.    Gulf Crews's Motion for Summary Judgment [Doc. 48]**

Plaintiff alleges negligence against Gulf Crews, Inc., owner of the M/V QUEST, under Section 905(b) of the LHWCA, which states in pertinent part:

---

[18] *Little*, 37 F.3d at 1075.

-18-

(b) Negligence of vessel

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . ..

33 U.S.C. §905(b).

Both Gallow and Gulf Crews agree "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 409 (1959), citing *Leathers v. Blessing*, 105 U.S. 626, 26 L.Ed. 1192; *The Max Morris*, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; *The Admiral Peoples*, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633. Included within this duty is the duty to provide a safe means of ingress to the vessel. *Lowry v. Overseas Bulk Tank Corp.*, 62 F.3d 397, *2 (5th Cir 1995), *citing Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 679 (5th Cir.1969) (shipowner has duty to provide safe egress *for crewmembers*), *cert. denied,* 90 S.Ct. 282 (1970). See also *Ross v. John E. Graham & Sons*, 1999 WL 511360, *1 (5th Cir. 1999) ("A vessel owner must provide *a passenger* with a reasonably safe means of boarding or disembarking, including the provision of proper gangways, landing places, *and personnel assistance.*") (emphasis added).

Gulf Crews, as the vessel owner, alleges there is no evidence showing Gallow's injuries were caused by the negligence of the vessel or its crew. To support its argument, Gulf Crews cites the deposition testimony of Captain Katan, a licensed vessel captain for twenty years who was at the helm on the day of the accident and who had operated the M/V QUEST for seven years in the West Delta Field at the time of Gallow's alleged accident. Captain Katan testified sea conditions were three to five feet on the date of the accident, which Captain Katan testified is "not uncommon" in

the winter and early spring months (March and April) in the West Delta Field.  Indeed, Captain Katan testified offshore operations would simply have to "shut down" if one could not conduct operations in three to five foot seas.[19]  Captain Katan also testified there is nothing inherently unreasonable or inherently unsafe about performing swing rope transfers to and from the M/V QUEST in three to five-foot seas.[20]

In response, Gallow argues vessel negligence in the following regards: (1) given the weather conditions, Captain Katan breached his duty of care in allowing the rope swing transfer to go forward; (2) water lapping up onto the vessel's deck created an unsafe condition for swing rope transfers; (3) Captain Katan positioned the boat at least five feet from the platform, thus, the vessel was too far from the platform when Gallow attempted his transfer; (4) the vessel's deckhand did not assist Gallow on his first attempt at transferring by catching Gallow when he swung to the vessel; and (5) Captain Katan should have known Gallow was untrained in swing rope transfers; had he known, he would have had the deckhand render assistance to Gallow to get him on board the vessel safely on the first swing.

This Court has already concluded plaintiff's arguments concerning weather conditions and water lapping onto the platform and/or the vessel's deck do not do not create a genuine issue of material fact, for the reasons noted, *supra.*

Furthermore, plaintiff's unsupported argument that the vessel should have been placed closer

---

[19] See Deposition of Captain Katan, attached as Exhibit "D" to Gulf Crews's motion for summary judgment, p. 20, ll. 5-25.  This Court notes it is almost impossible to read the page number in the top right hand corner of the deposition transcript because of the way the record is paginated for purposes of the record on top of the page number that has already been given by the court reporter.  Nevertheless, it appears this portion of Captain Katan's testimony does appear on pg. 20.

[20] Unfortunately, Gulf Crews did not provide the entirety of Captain Katan's deposition testimony. However, this portion of Captain Katan's testimony was attached to the motion for summary judgment filed by Newfield.

to the platform – and that the captain's failure to do so constitutes a breach of duty -- is similarly insufficient to defeat an otherwise well-reasoned and supported motion for summary judgment. Plaintiff argues John Myers testified the back deck of the vessel (the landing area) was approximately five feet from the platform at the time of the transfer,[21] while defendant argues Captain Katan testified the vessel was one to two feet from the platform. Specifically, Captain Katan testified he "couldn't really tell" how far the stern of the vessel was from the platform, but he guessed "probably no more than three feet, four feet."[22]

However, the difference of approximately one to two feet regarding the placement of the vessel *vis-a-vis* the platform is immaterial under the facts at issue. For purposes of this motion only, this Court will assume the vessel was five feet from the platform as plaintiff argues. Gallow fails to offer any competent evidence showing such a distance created an unsafe condition for the transfer and was a cause of Gallow's accident. Indeed, Gallow has offered no factual basis, expert testimony, statutory, or jurisprudential authority to support an inference that a distance of five feet between a vessel and this platform creates an unsafe condition for a swing rope transfer. Such an absence of evidence and support is particularly problematic for plaintiff in light of the successful swing rope transfers immediately preceding the plaintiff's aborted swing, as well as plaintiff's immediately subsequent successful swing and no evidence to show the position of the vessel shifted during this short period of time. Thus, any issue as to the distance of the vessel from the platform at the time of Gallow's aborted swing transfer is immaterial without any evidence establishing the distance was

---

[21] See Deposition of Myers, attached as exhibit to plaintiff's opposition brief to Gulf Crews's motion for summary judgment, p. 30, l. 25; p. 31, ll. 1-5.

[22] See Deposition of Captain Katan, attached as exhibit to plaintiff's opposition brief to Gulf Crews's motion for summary judgment, p. 113, ll. 22-25; p. 114, ll. 1-2.

not substantially the same for all the transfers occurring during the same time sequence and in light of the other successful transfers. Thus, Gallow has failed to present any evidence of any nature to support the bald assertion that such distance was a cause of Gallow's accident in the face of the other successful swings and his immediate second, and successful, swing.

With respect to plaintiff's argument that Gulf Crews is liable because its captain did not know – but should have known – plaintiff was untrained in swing rope transfers, this Court notes, on first blush, neither party has adequately briefed the issue. In its reply brief, Gulf Crews makes no mention of this argument as raised in plaintiff's opposition brief. Also, this Court is unable to determine whether plaintiff's argument is *factually* correct, that is, (1) whether plaintiff was or was not trained and/or experienced in swing rope transfers, and (2) whether Captain Katan knew of plaintiff's level of training.[23] Nevertheless, plaintiff apparently received *some* form of training in swing rope transfers, as he has sued Grand Isle Shipyard, Inc. for failing to *properly train* plaintiff in swing rope transfers. Furthermore, as captain of the vessel, it is reasonable for Captain Katan to assume that contractors working aboard platforms in the Gulf know how to get on and off a platform, unless they tell the captain otherwise, or unless there is some other evidence to put the vessel otherwise on notice. Under the circumstances of this case, plaintiff has presented no evidence the captain – and, therefore, the vessel – was on notice or should have been on notice that a contractor's employee already working on a platform accessed by a swing rope in the Gulf of Mexico did not have the proper training in swing rope transfers necessary to leave his work station on the platform which had required a swing rope transfer to access. Plaintiff, as noted, has brought suit against the company which provided his training for swing rope transfers, thus this Court can assume plaintiff

---

[23] Plaintiff has filed separate claims against Gulf Island Shipyards, Inc. for failure to properly train plaintiff in swing rope transfers. See Doc. 53.

had had some training in swing ropes. Should that training have been insufficient, as plaintiff now alleges, is not something of which *the Captain* should have known. Thus, defendant has presented evidence that plaintiff was on a platform accessed by swing rope when he attempted to leave the platform; no evidence has been presented plaintiff was unfamiliar or untrained – rather plaintiff has made allegations plaintiff received some training - albeit inadequate - or that plaintiff required attention or care from either the Captain or the deckhand before the incident or on the day of the incident. In short, defendant has presented limited evidence and argument to support its motion, however, plaintiff has failed to carry his burden of showing evidence or legal theory to support his argument Gulf Crews is liable because the captain of the vessel knew or should have known the plaintiff was not properly trained in swing rope transfers.[24]

Finally, plaintiff's argument the vessel nonetheless, had a duty to place a deckhand on the deck of the vessel and to assist Gallow in his transfer appears, on first blush, speaks of merit. It is undisputed the vessel's deckhand did *not* assist plaintiff on his unsuccessful first swing, but did assist him – either alone or with others – on plaintiff's successful second swing. As the movant, the burden is on Gulf Crews to point to an absence of evidence on the part of the plaintiff's claims that the deckhand acted inappropriately given Gulf Crews' legal obligation. The burden then shifts to the plaintiff to demonstrate by competent evidence that there is an issue of material fact warranting trial.

Gulf Crews argues "[p]laintiff's testimony confirms that nothing changed between the first unsuccessful attempt and the second successful one, other than how far he swung onto the vessel

---

[24] Again, this Court does not have evidence before it in connection with *this* motion that plaintiff, in fact, was not properly trained or was experienced in swing rope transfers or that all contractors who transport their personnel by way of crew boat must provide adequate training in swing rope transfers or personnel basket transfers.

deck." Plaintiff's testimony, however, does not support this argument. In fact, plaintiff argues there

was at least one material difference between the first and second attempts, that is, on the first

attempt, no one "caught" him, while on the second attempt, someone did:

> Q (unknown questioner[25]):    Did anybody on the plus 10[26] deck help you; were
> they pulling up on the rope or they left it hanging and
> you were just climbing up it?

> A (Gilbert Gallow):   Oh, it was just me climbing up the rope.  Nobody gave me a
> hand or nothing.  I just climbed up the rope and I rolled on to
> the plus 10.

> Q:    So nobody grabbed your hand as you got close to the plus 10 deck and helped
> you up or anything like that.

> A:    No, sir.

> Q:    You did that all on your own.

> A:    Yes, sir.

> Q:    So you are back on the plus 10 deck.  Right.  Did somebody else load on to
> the vessel after that or did you immediately try to load back on to the vessel
> again?

> A:    I immediately tried to load back again.  They said, "Try it again."

> Q:    So you just grabbed the rope again, swang over.

> A:    And we caught each other.

> Q:    And no problems.

---

[25] The Court has not been provided with full deposition transcripts but excerpts only.  Therefore, it is unknown to the Court whether the questioner changes in the pages that have not been provided to the Court.

[26] As Gulf Crews points out in its summary judgment motion, there was some confusion on the part of plaintiff at his first deposition, taken on August 15, 2006, regarding whether the platform deck he swung from was the Plus 5 or the Plus 10 deck.  In his first deposition, plaintiff referred to the deck as the "Plus 10" deck.  However, after being shown pictures at his second deposition, plaintiff confirmed that the swing rope transfer in this case occurred from the "lower" deck, which the other deponents have identified as the "Plus 5" deck.  Thus, there appears to be no dispute that the deck from which plaintiff swung on the date of his accident was the "Plus 5" deck, not the "Plus 10" deck.

A:     Right.

Q:     All right.  You grabbed the rail, stepped off the rope, everything –

A:     No, I didn't grab the rail.  We caught each other.

Q:     Who caught each other?

A:     Well, me and the crew.  I can't – My technician and all the rest of them that was on the back of that boat.

Q:     All right.  So after you had the problems with the first one, some people who were on the boat came back there so that when you swang the second time they were going to be there to grab you.

A:     Yes, sir.

Q:     Is that something that is done where people grab you or usually with the swing rope you are just stepping off on the vessel and grabbing the rail?

A:     I don't know.  From what I saw all you do is swing and grab the rail of the boat.

Q:     All right.

A:     But I don't know if that is a typical thing where everybody grabs each other.[27]

At his second deposition on June 28, 2007, plaintiff testified the failure of the vessel to have someone catch him was a cause, in part, of his accident:

Q (unknown questioner):    What exactly in your mind caused you not to be able to successfully transfer to the vessel?

A (Gallow):    The slipping on that platform of that vessel and not catching anybody, or, you know, catching somebody's hand, holding onto somebody, you know, the other person that was in the back of the boat catching his hand.[28]

The plaintiff also offers the testimony of the captain of the vessel, whose testimony appears

---

[27] See August 15, 2006 Deposition of Gilbert Gallow, attached as Exhibit "A" to Gulf Crews's motion for summary judgment, at p. 71, ll. 2-25; p. 72, ll. 1-24.

[28] See June 28, 2007 Deposition of Gilbnert Gallow, at p. 60, ll. 15-21.

to support the plaintiff's argument that the vessel's deckhand owed a duty to assist the plaintiff in

his transfer attempt:

> Q (unknown questioner):   What are the deckhand's responsibilities during
> personnel or swing rope transfers?
>
> A (Captain Katan):   They assist them getting the rope.  Sometimes it's out of their
> reach.  They handle any baggage, any tools, anything like that,
> and just to generally assist them if they need it.
>
> Q:   Is it, in your experience, the person making the transfer, they will request
> assistance from the deckhand?
>
> A:   **Yes.  Or maybe sometimes just see them, you know, teeter-totter a little
> bit or the boat drops right when they will get on and they will need just
> a little hand to steady them up.  You're going from a stable platform to
> an unstable one.**[29]

Whether the failure to "catch" plaintiff on his first swing violated the vessel's duty to provide

safe ingress and egress is unknown to this Court, as neither party has provided the Court with

evidence regarding the vessel's ordinary customs and practices with regard to the placement of

deckhands during swing rope transfers; exactly how the swing occurred; or whether Gallow "teeta-

totter[ed]" or the "boat drops[ed] right when [he] they get [got] on and [he] . . . need[ed] just a little

hand to steady [him] them."  Plaintiff testified on his first swing attempt, his "feet touched the tip

of the boat" . . . [and] slipped and caught a tire that was hanging with the chain."[30]  However, this

testimony does not clearly establish whether, given the position of the plaintiff via-a-vis the vessel

on his first swing attempt, the deckhand could have – or should have – assisted the plaintiff as he

swung.  In fact, plaintiff's testimony appears to suggest plaintiff did not touch the landing *deck* of

---

[29] See Deposition of Captain Katan, attached as Exhibit "9" to plaintiff's opposition to Gulf Crews's motion for summary judgment, at p. 32, ll. 7-24.

[30] See August 15, 2006 Deposition of Gallow, at p. 55, ll. 2-6.

the vessel, but rather the tires on the side of the vessel.  Perhaps it was reasonable for the deckhand to assist Gallow under these circumstances; perhaps it was not.  Facts sufficient for this Court to make this determination have not been provided by either party.

Significantly, although defendant attaches the deposition excerpt of John Myers that discusses this issue, defendant does not attach the portion of the transcript that shows Myers's answer to a question regarding whether vessels typically have a deckhand on hand to assist an individual swinging onto the vessel, as follows:

> Q.    Mr. Taylor, the deckhand that was on the back –
>
> A.    Yes, sir.
>
> Q.    -- was he in a position that if Mr. Gallow had needed assistance and had actually timed his jump over or swing over that he could have assisted him?
>
> A.    Yes, sir.  He was on the back deck.
>
> Q.    So he was where he was supposed to be?
>
> A.    Yes, sir.
>
> Q.    And it's my appreciation that not everybody wants assistance in a swing-rope transfer. Some people do; some people don't.  It's a personal preference.[31]

Here, the transcript skips from page 33 to page 39, thus this Court does not have benefit of Mr. Myers's answer to this question.[32]  Nor does the Court have benefit of any other testimony as to the facts of the actual transfer.[33]

Thus, the Court does not have the necessary information to make the determination as to

---

[31] See Deposition of John Myers, attached as Exhibit "C" to Gulf Crews's motion for summary judgment, at p. 33, ll. 15-25.

[32] Notably, although plaintiff also attaches excerpts of Myers's deposition, plaintiff does not include the pages addressing this issue.

[33] The deckhand, James Taylor, has not been deposed.

whether Gulf Crews breached a duty to plaintiff by its deckhand failing to assist plaintiff with his first transfer attempt. Myers, as a witness to the swing, was aware plaintiff had mis-timed his swing. Myers testified the plaintiff "mis-timed his swing," and that plaintiff went to swing out when the vessel dropped. Whether the deckhand – who was on the back deck of the vessel positioned to help with the transfers – also knew or should have known plaintiff mistimed his swing and thus should have or even *could* have offered assistance is not known, argued or briefed by either party. Although Myers testified the deckhand was on the back deck of the vessel at the time of the incident and located in such a manner that he could have provided assistance if necessary, additional facts – including the size of the vessel, whether any equipment or other items were positioned on the vessel so as to make it possible for the deckhand to render assistance, how high the plaintiff was in relation to the vessel as he swung over the vessel's back deck, and the position of both the plaintiff and the deckhand as plaintiff swung toward the vessel – are unknown to this Court. Considering the foregoing, this Court concludes both parties fail to carry their burden on this issue, and there remains a genuine issue of material fact regarding this issue.[34]

Therefore, Gulf Crews's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiff's Section 905(b) negligence claims against Gulf Crews alleging the following theories of liability: that the vessel owner was negligent in permitting swing rope transfers given the weather conditions; that the vessel owner was negligent in permitting swing rope transfers when water was lapping onto the vessel's deck; that the vessel owner was negligent in its placement vis-a-vis the platform at the time of plaintiff's accident;

---

[34] This Court renders no opinion as to whether the deckhand was negligent or not negligent in failing to assist the plaintiff on his first swing. It may, or may not, have been possible to do so. Simply put, neither plaintiff nor Gulf Crews has provided this Court with sufficient facts to make the determination.

and that the vessel owner was negligent because its captain did not know – but should have known – that plaintiff was untrained in swing rope transfers. Therefore, any negligence claims asserting the foregoing theories of liability are DISMISSED WITH PREJUDICE. The motion is DENIED with respect to plaintiff's negligence claim based on the theory of liability that the deckhand's failure to assist plaintiff with his first transfer attempt breached the vessel's duty to provide a reasonably safe ingress to the vessel, inasmuch as neither party has carried its burden on this issue and this Court does not have sufficient information to make a determination thereon.

**C.    C&D's Motion for Summary Judgment [Doc. 46]**

**Procedural Problem with C&D's Motion for Summary Judgment**

The court notes plaintiff's failure to articulate his claims against the specific defendants is most problematic with respect to defendant C&D. The record shows the magistrate judge conducted a Rule 16 conference with counsel on August 23, 2006 and granted plaintiff "leave to amend the complaint to add C&D Production Specialities as a defendant" [Doc. 21]. Thereafter plaintiff filed a motion entitled "Motion to Add Additional Party," in which plaintiff states he "*desires* to add C&D . . . as a party defendant, *it being alleged that C&D had responsibility and was negligent in causing the accident and injuries to Gilbert Gallow*." [Doc. 22, emphasis added]. No proposed supplemental or amending pleading was attached to this motion. The magistrate judge granted the motion, ordering that "the original complaint filed on February 16, 2006 *be allowed to be supplemented and amended* to add C&D Production Specialist Company, Inc. as a party defendant." (emphasis added) [Doc. 23]. However, *plaintiff did not file an accompanying amended complaint, nor thereafter file an amending complaint* formally bringing C&D into this matter, and asserting his specific claims and/or legal theories against C&D. This procedural deficit was compounded when C&D

nevertheless filed a responsive pleading entitled "Responsive Pleading Presenting Defenses Under Rule 12B" on October 30, 2006 [Doc. 26].[35]

The problem for this Court is that, notwithstanding the magistrate judge's orders *granting leave* to plaintiff to amend the complaint to assert claims against C&D and thereafter permitting C&D *to be added* as a party, and further notwithstanding C&D's filing of a responsive pleading entitled "Responsive Pleading Presenting Defenses Under Rule 12B" – which, notably, does not allege claims against C&D – plaintiff's claims against C&D have not properly been asserted pursuant to Rule 8 of the Federal Rules of Civil Procedure.[36]

This Court has previously noted the failure of plaintiff to allege his claims against the defendants with particularity. However, with respect to the other defendants in this lawsuit, plaintiff employed the proper procedural vehicle and identified, albeit generically and collectively, a source of law for claims made against those defendants. With respect to C&D, however, plaintiff alleges only that "*C&D had responsibility and was negligent in causing the accident and injuries to Gilbert Gallow*" within his request for leave to file.

Regrettably, plaintiff has not formally brought C&D into this matter, but rather has only

---

[35] The Court notes C&D's "Answer" responds to "Plaintiff's Original Complaint and to both First Supplemental and Amending Petitions." The record, however, contains only one First Supplemental and Amending Complaint, which re-alleges the claims alleged against *Newfield* in the original complaint, and add claims against *Gulf Crews, Inc.* See Doc. 7. No claims are alleged against C&D in the First Supplemental and Amending Complaint located at Doc. 7, nor in any other complaint filed by the plaintiff.

[36] Rule 8 states:

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
>
>> **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>> **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
>> **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed.R.Civ.P. 8(a).

received leave to do so; C&D's responsive pleading is also procedurally flawed if no amendment

to plaintiff's petition has been filed adding C&D as a defendant. Further, the motion for leave makes

only broad generic allegations of a nature to support leave to file and does not deliniate the claims

themselves as required by Rule 8 of the Federal Rules of Civil Procedure. Thus, C&D now asks this

Court to dismiss a claim which is not properly procedurally before this Court. This Court, in fact

notes, plaintiff, in his opposition brief to C&D's motion for summary judgment, for the first time

alleges C&D's liability arises under OCSLA, and, pursuant to OCSLA, "C&D, through its employee,

Kevin Myers, owed a duty to Gallow to exercise ordinary care and refrain from creating hazardous

conditions in the fulfillment of its contractual obligation," citing *Cormier v. Honiron*, 771 So.2d 193

(La. App. 3rd Cir. 2000), issues raised for the first time within that context.

Because there are no claims properly pled against C&D in this matter, there are no claims

against C&D for this Court to consider. Consequently, C&D's motion for summary judgment is

DENIED.[37]

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by Newfield Exploration

Company [Docs. 47] is GRANTED in its entirety, and plaintiff's claims against Newfield are

DISMISSED WITH PREJUDICE. The motion for summary judgment filed by Gulf Crews, Inc.

[Doc. 48] is GRANTED IN PART and DENIED IN PART, as follows: (1) Summary judgment is

GRANTED in favor of Gulf Crews with respect to plaintiff's Section 905(b) negligence claims based

---

[37] Although C&D's motion is denied, this Court assumes C&D has no objection to a proper amendment of plaintiff's complaint to add it as a defendant, inasmuch as C&D has "answered" plaintiff's "complaint." Therefore, this Court affirms the Magistrate's finding and also grants leave for plaintiff to cure the procedural defect created by his failure to file a proper Amending And Supplemental Complaint adding C&D as a party defendant. Considering the foregoing, it is ORDERED that plaintiff may cure this deficiency within ten days of the date of this Memorandum Ruling. C&D will then have 10 days within which to file its answer to the amended complaint. C&D will then have 10 days from the filing of its answer within which to file a new motion for summary judgment should it so desire.

on theories of liability that the vessel owner was negligent in permitting swing rope transfers given the weather conditions; that the vessel owner was negligent in permitting swing rope transfers when water was lapping onto the vessel's deck; that the vessel owner was negligent in its placement vis-a-vis the platform at the time of plaintiff's accident; and that the vessel owner was negligent because its captain did not know – but should have known – that plaintiff was untrained in swing rope transfers.  Thus, plaintiff's negligence claims asserted against Gulf Crews based on the foregoing theories of liability are DISMISSED WITH PREJUDICE.  (2) Gulf Crews's motion for summary judgment is DENIED with respect to plaintiff's negligence claims based on the theory of liability that the deckhand's failure to assist plaintiff with his first transfer attempt breached the vessel's duty to provide a reasonably safe ingress to the vessel, inasmuch as neither party has carried its burden on this issue and this Court does not have sufficient information to make a determination thereon. Finally, the motion for summary judgment filed by C&D Production Specialist Co. [Doc. 46] is DENIED for the reasons stated herein.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _25_ day of February, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE